UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>for the use and benefit of, ADVANCED )<br>CONSTRUCTION TECHNIQUES, LTD. )<br>    ) <br>    Plaintiff ) <br>    ) <br>    v. ) <br>    ) <br>BENCOR-PETRIFOND, a joint venture, ) <br>et al., ) <br>    ) <br>    Defendants. ) | CAUSE NO. 3:06-CV-439-TS |

**OPINION**

The Plaintiff, Advanced Construction Techniques (Advanced), filed its Complaint on July 14, 2006. The Defendants moved to dismiss or stay proceedings on September 8, 2006. On December 15, 2006, Advanced filed its First Amended Complaint. The First Amended Complaint asserts state contract claims against Bencor-Petrifond Joint Venture (Bencor) and the entities comprising the joint venture. The Complaint also asserts a claim under the Miller Act, 40 U.S.C. § 3131 et seq., against the payment bond surety companies on the project, Continental Casualty Company (Continental) and Seaboard Surety Company (Seaboard). The Defendants renewed their motion to dismiss or stay proceedings on January 5, 2007. For the reasons stated below, the Court stays proceedings until the dispute has been arbitrated pursuant to the subcontract.

**A.     Background**

Advanced is a Canadian corporation that does specialized ground modification and concrete restoration work. Bencor is a joint venture formed for the purpose of bidding and performing a project on the Mississinewa Reservoir in Peru, Indiana. Bencor entered into the

Prime Contract with the Army Corps of Engineers on February 22, 2001, to work on the project. As required by the Miller Act, Bencor obtained a payment bond on September 7, 2001, from Continental and Seaboard.

On July 10, 2002, Bencor executed a subcontract with Advanced to pretreat the foundation of the dam. As required by 31 U.S.C. § 3905, the subcontract includes a payment clause which obligates the Bencor to pay Advanced for satisfactory performance under the subcontract within 7 days out of the amounts paid by the Corp of Engineers to Bencor. Advanced alleges that the Corps of Engineers paid Bencor for Advanced's subcontract work, but Bencor has failed to forward appropriate payments to Advanced in violation of the terms of the subcontract. Advanced seeks damages of $3,582,117.20.

The subcontract also contains a section for resolving disputes "arising solely from the actions or inactions of the Contractor or Subcontractor or the Subcontract Agreement or breach thereof that does not involve the Owner." (Def. Ex. 3, Subcontract Agreement 7, DE 13-5.) Such disputes must be mediated: "If the parties cannot settle the claims between themselves they shall submit them to mediation in accordance with the Construction Industry Rules of the American Arbitration Association." (Def. Ex. 3, Subcontract Agreement 7, DE 13-5.)  If mediation fails, the parties are required to "submit the claims between themselves to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association." (Def. Ex. 3, Subcontract Agreement 7, DE 13-5.)

**B.     Whether Advanced's Claims against Bencor Must Be Arbitrated**

The Defendants argue that Advanced's claim against Bencor must be arbitrated as

required by the contract. Advanced argues that it did not waive its Miller Act rights in the contract and should not be forced to arbitrate its claims against Bencor before being permitted to sue Bencor in this Court.

The Defendants are correct. It does not matter whether Advanced waived its rights under the Miller Act with respect to Bencor, because Advanced does not assert a Miller Act claim against Bencor. Advanced's claims against Bencor are state law claims for breach of contract, quantum meruit, and unjust enrichment. If the contract requires these claims to be submitted for arbitration, then Advanced may not litigate the claims in this Court.

The Federal Arbitration Act applies to this contract because the subcontract affects interstate commerce. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.'" (quoting *Perry v. Thomas*, 482 U.S. 483, 490 (1987))). Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court stated that this section "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The subcontract states that claims that arise "solely from the actions or inactions of the Contractor or Subcontractor or the Subcontract Agreement or breach thereof that does not involve the Owner" will be submitted to arbitration. Advanced does not deny that its claims arise

3

"solely from the actions or inactions of the Contractor." Therefore, Advanced's claims against Bencor must be submitted for arbitration. Section 3 of the FAA requires that litigation of arbitrable issues be stayed, 9 U.S.C. § 3; *Volkswagen of Am. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007), and so, the Court stays litigation of Advanced's claims against Bencor until arbitration has been had in accordance with the terms of the agreement.

**C.     Whether to Stay the Proceedings in this Court**

The arbitration clause in the subcontract does not apply to disputes between Advanced and the sureties, and so, the parties are not required to arbitrate the Miller Act claims. However, litigation of the Miller Act claims may be stayed pending the outcome of arbitration.

"Enforcement of agreements to arbitrate under the Federal Arbitration Act may require piecemeal litigation, . . . and the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Sud's of Peoria*, 474 F.3d at 971. When a court stays arbitrable issues, but allows nonarbitrable issues to proceed, the court must consider "'the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from such delays.'" *Sud's of Peoria*, 474 F.3d at 971 (quoting *AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001)).

> When these factors weigh in favor of staying the entire action pending arbitration, the district court may abuse its discretion in allowing the nonarbitrable issues to proceed absent a stay. In many instances, moreover, district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court.

*Sud's Of Peoria, Inc.*, 474 F.3d at 972.

In this case, Advanced's Miller Act claims against Continental and Seaboard necessarily depend on whether Bencor breached its subcontract with Advanced. The liability of the sureties, Seaboard and Continental, is limited to the liability of the principal, Bencor. *In re Kemper Ins. Companies*, 819 N.E.2d 485 (Ind. Ct. App. 2004). The extent of that liability will be determined by arbitration, and there is no reason to duplicate the determination here. To do so would risk inconsistent rulings. Also, Advanced does not give any reason to think it would suffer hardship by a stay of its Miller Act claims. The court in *United States ex rel. MPA Construction v. XL Specialty Insurance Co.*, 349 F. Supp. 2d 934 (D. Md. 2004), addressed this issue. In that case, the court noted that delay from staying the Miller Act claims was speculative and unlikely. If a plaintiff wins arbitration, it still does not need to litigate its Miller Act claims unless the principal does not pay the arbitration award. *Id.* at 942. Advanced has no evidence to suggest that, should Bencor lose in arbitration, it would be unwilling or unable to pay Advanced what it is owed. The *MPA Construction* court also found that the sureties would likely be bound by the arbitration result. That appears to be the case here as well, but the parties have not addressed the issue, and the Court need not analyze that issue further.

A long line of cases has upheld the stay of Miller Act claims while the liability of the contractor is submitted to arbitration. *Id.* at 941 (collecting cases). Advanced has cited no similar case in which a stay has not been granted. Advanced argues only that the Seventh Circuit has not ruled on this issue and that this Court should buck the prevailing view. However, Advanced has not given any good reason not to stay its Miller Act claims, and the Court sees no justification to allow litigation on those claims while the same issues are being arbitrated. Therefore, Advanced's Miller Act claims will be stayed pending the arbitration of Advanced's claims

5

against Bencor.

## ORDER

For these reasons, the Court grants the Defendants motion [DE 12, 36] and STAYS all proceedings in this case until Advanced has arbitrated its dispute with Bencor.

SO ORDERED on June 11, 2007.

                                              /s/ Theresa L. Springmann  
                                            THERESA L. SPRINGMANN  
                                            UNITED STATES DISTRICT COURT